Allison v. The C. & N. W. R. Co.

---

## Allison v. The C. & N. W. R. Co.

1. **Evidence:** LIMITATION OF: INSTRUCTION. Evidence which is competent and admissible for any purpose cannot be rejected because it is liable to be considered by the jury for an improper purpose. To avoid this, however, the party objecting to its introduction should ask an instruction limiting its effect to the legitimate purpose.

2. ———: ERROR WITHOUT PREJUDICE. No error can be predicated upon the exclusion of testimony when the facts sought to be proved are afterwards established in the further examination of the same witness.

3. ———: ADMISSIBILITY: CORROBORATION. Where testimony had already been introduced, in an action for damages for injuries caused by a railway accident, to the effect that in the vicinity of the place of the accident the ties were in a bad condition and rotten, the further testimony of another witness that he knew there were rotten ties in the track at a distance of more than fifteen rods from the point where the accident occurred was admissible.

4. **Contract:** CHAMPERTY: ACTION.   A champertous contract between the plaintiff and his attorney in an action for damages is no ground for the abatement of the action.

5. **Damages:** RECOVERY: PREVIOUS INJURY.   It is no defense to an action for damages for personal injuries that the plaintiff was not in sound bodily health at the time the injuries were received.

6. ——: ——: ——: RAILROADS.   Where one had been injured by the negligence of the employes of a railroad company, and while suffering from the injury received another by an accident to a train upon the road of the same company, it was *held* that he could recover for the latter injury although a person well and sound might have suffered no ill effects therefrom.

7. **Practice:** FINDING INCONSISTENT WITH INSTRUCTION.   A judgment will not be reversed because a special finding of the jury is contrary to an instruction, when such finding could not affect the substantial rights of the parties and wrought no prejudice.

8. **Verdict:** CONFLICT OF TESTIMONY.   Where the conflict of evidence for which a reversal is asked does not bring the mind irresistibly to the conclusion that it is not the result of a free, sound and unbiased exercise of judgment, and that manifest injustice will result if it is permitted to stand, the verdict will not be disturbed.

9. **Pleading:** EVIDENCE: CHAMPERTOUS CONTRACT.   Matter in abatement of an action, based upon a champertous contract between the plaintiff and his attorney, must be pleaded to be available, and, unless pleaded, evidence tending to establish such contract is not admissible.

*Appeal from Greene Circuit Court.*

WEDNESDAY, DECEMBER 29.

In the first count of the petition plaintiff alleges that on the 30th day of September, 1870, he went upon the defendant's cars at Grand Junction to go to Moingona; that the conductor informed him the train did not stop at that place, but agreed that he would check the speed of the train at Moingona so that plaintiff could safely get off, and that plaintiff relied upon this promise and leaped from the train and was injured; that the conductor failed to check the speed, and that plaintiff did not know the rate of speed at which the train was running when it passed the depot where plaintiff leaped from the train. In this count plaintiff claims $10,000.

In the second count of the petition plaintiff claims $65,000,

and alleges that on the 1st of October, 1870, he was riding as a passenger on one of defendant's freight trains, and that because of defects in the defendant's cars or road the train was wrecked, and that plaintiff's arm was broken and his shoulder and collar-bone were permanently injured.

The defendant denies the allegations of plaintiff's petition. There was a jury trial resulting in a verdict for the defendant on the first count, and for the sum of $1,200 on the second count. Motion in arrest of judgment and for new trial overruled. Judgment upon the verdict. Defendant appeals. Upon a former trial of this cause a verdict for $2,000 was returned for the plaintiff on the second count, which was set aside by the court because of plaintiff's refusal to remit all in excess of $500.

*E. S. Bailey* and *N. M. Hubbard*, for appellant.

Evidence respecting the condition of defendant's track at any other than the place of the injury complained of is not admissible. (*Cotton v. R. R. Co.*, 45 N. Y., 574.) Plaintiff can only recover for such damage as would have resulted from a similar injury to a well person. (3 Pars. on Con., 177.) If a suit in its origin or purposes is affected by champerty, it should be dismissed. (*Hunt v. Lyle*, 8 Yerg., 142; *Webb v. Armstrong*, 5 Humph., 379; *Barker v. Barker*, 14 Wis., 142; *Allard v. Lamirande*, 29 Wis., 506.) A verdict should be set aside when palpable injustice has been done thereby. (*Fawcett v. Wood*, 6 Iowa, 404; *Jewitt v. Miller*, 12 Id., 87; *Lester & Bro. v. Sallack*, 21 Id., 478.)

*Brown, Wyllis & Williams* and *C. H. Jackson*, for appellee.

DAY, J.—I. The evidence established that the muscles of plaintiff's right arm and shoulder were wasted and shrunken. The theory of the defense was that the injury was simulated, and that the appearance of the arm and shoulder was the result of long continued disuse. The plaintiff at the suggestion of the physicians visited Dr. Andrews of Chicago, and was examined by him.

Against the objection of defendant, plaintiff was permitted to testify as follows:

"The doctor prescribed that I should keep the weight of my arm off of my shoulder as much as possible; that I should give it rest. And he prescribed a liniment that I should use. The only prescription he gave or advised was to carry the weight of the arm on the shoulder as little as possible; the use of the liniment, rest for the arm, and the wearing of flannel on the arm. That was the only medicine he gave me, and those were the directions that he gave to Dr. Rouse. Dr. Andrews made an examination of my arm and shoulder at that time. I think that Dr. Andrews made an examination of my collar bone. I think there was no appearance of the bruise at that time. I followed Dr. Andrew's directions." The objection urged to this testimony in argument is that it is hearsay. We are very clear that it is not vulnerable to this objection. Any person may testify that a thing was said or an act was done who is cognizant of the fact. The only question is whether it is competent to show at all that the thing was said or the act done. If it is competent to establish the fact, it may be done by one who was present, just as well as by the person who did it. In this case the propriety, necessity, or reasonableness of the direction does not necessarily arise. The material question is, was such direction given? We think it can scarcely be questioned that if Dr. Andrews had himself been on the stand he might have testified that he directed plaintiff to carry his arm in a sling.

The testimony would be admissible, not for the purpose of showing that the doctor thought the injury was so serious as

1. EVIDENCE: limitation of instruction. to require such treatment, but for the purpose of repelling the claim of the defendant that the plaintiff had acted in bad faith, and had carried his arm in a sling to create a false impression as to the extent of the injury. And if this fact could have been proved by the doctor, it may be proved by any one else. See 1 Greenleaf on Evidence, section 101.

If evidence is competent and admissible for any purpose, it cannot be rejected because it may be considered by the jury

for an improper purpose. Under such circumstances a party must guard himself against prejudice by requesting an instruction limiting the testimony to its legitimate objects. Appellant claims that by the introduction of this testimony plaintiff was enabled to place before the jury the opinion of Dr. Andrews as to the serious nature of his injury, without the sanction of an oath, and without subjection to a cross-examination. The defendant, however, might have guarded against the consideration of the testimony for such purpose, by requesting the proper instructions.

II. Plaintiff testified that he could earn $2,000.00 a year before he sustained the injury complained of, and that he is 2. ——: error now entirely disabled. Defendant entered upon
without prej-
udice. a line of cross-examination for the purpose of showing that plaintiff had accumulated no property, and had shown where plaintiff was born, how long he lived there, where he moved to when he came to this State, the number of his family, when he went into business, how long he followed it, and what property his father gave him, when the plaintiff objected " to this style of examination," and the objection was sustained. The abstract shows that, notwithstanding the sustaining of the objection, the defendant afterward pursued the same line of cross-examination, and elicited fully all the facts respecting plaintiff's business, employments, and accumulations. If it should, therefore, be conceded that there was error in checking defendant in the proposed cross-examination, it was error without prejudice.

III. After a very full and searching cross-examination, plaintiff was asked upon his re-examination to state fully how he could earn $2,000.00 a year. · Plaintiff answered as follows: " During the last year that I ran the farm I had a shingle mill and made with it at the rate of $2,000.00 a year." The same fact was substantially stated in his cross-examination, and we are unable to see how a repetition of it in his re-examination could have worked any prejudice.

IV. There was evidence tending to show that the cars were precipitated from the track by reason of the breaking of ties from rottenness. One Hawkins was introduced as a witness,

and amongst other things testified as follows: " I was not there
when the smash-up took place, but I was there
the next morning.   The wreck was off the track
and the new track down when I saw it.   I did not
notice much about the old ties, or the new ones either, only I
saw there were new ties there.   I did notice rotten ties and
loose ties all along the road.   I noticed them while walking
along the track at that time and after that.   I never was there
before that.   I think it was on this side that I noticed the
ties.   I did not notice any rotten ties until I got west of the
wreck. I think where the ties had been put in they were part
old and part new ties."   This testimony was received without
objection.   Plaintiff then asked the following question, to
which defendant objected as immaterial: " Did you notice
any rotten ties west and in the immediate vicinity of the
accident?"   Witness answered: " I don't remember of seeing
any ties that were very bad that were close to the wreck.
They had perhaps put in seven or eight new ties, and perhaps
more than that; there were ties laying around there but I did
not notice them particularly.   I did not notice any of the old
ties."   Upon cross-examination the witness stated: " I noticed
four ties that were not over good there.    There are more or
less poor ties all the way from there to Carroll City. I walked
on the track that fall all the way from there to Carroll City.
It was somewhat wet there at that time.   There were a good
many loose ties on the track.   The road was not all ballasted.
The ties are apt to get loose in wet weather on a road built on
prairie soil.   I don't remember seeing any ties within twelve
or fifteen rods of the accident that were unfit for use."   The
defendant thereupon moved that the evidence of the witness
as to rotten ties west of the accident be excluded.   The motion
was overruled and defendant excepted.   It will be observed
that the testimony of the witness respecting rotten ties west of
the wreck was admitted without objection.   If it is to be ex-
cluded it must be because of matters elicited upon the cross-
examination.   The cross-examination shows merely that these
ties were not within fifteen rods of the wreck.   For aught that
appears they were within sixteen rods of the place of the

*3. ———: ad-
missibility:
corrobora-
tion.*

accident.    It was shown by this witness that at the place of the wreck new ties had been put in and the old ones had been discarded.    Another witness testifies that at the place of the wreck, and in the immediate vicinity of it, there were poor ties and rotten ones.    In connection with this testimony, and as corroborative of it, it was not error to admit testimony showing the condition of the road within sixteen rods of the place of the accident.

V.    The defendant in cross-examination of plaintiff sought

4. CONTRACT: to elicit facts to show that a champertous agree-
champerty:
action.       ment respecting the suit existed between plaintiff and his attorney.    The proposed examination was, upon plaintiff's objection, prevented and this action of the court is assigned as error.    It is claimed that if the questions which were put had been answered, the case would have been brought within *Boardman & Brown v. Thompson*, 25 Iowa, 487.    We are unable to perceive upon what principle a defendant can, as a defense, avail himself of the fact that a champertous contract has been entered into between the plaintiff and his attorneys for the maintaining of the suit.    Such champertous contract is against public policy and void.    Neither party to it can enforce it against the other.    By the Roman law such contracts were severely condemned, and by the common law they were punished as misdemeanors.    But how can a party exonerate himself from his agreements, or escape the consequences of his torts by showing that the opposite party is prosecuting his remedy through such agreement?    If he could do so an unheard of effect would be given to a void agreement.    Suppose a suit upon a promissory note is prosecuted under a champertous arrangement between the plaintiff and his attorney, does this avail the defendant to defeat an otherwise just liability?    Will not the law rather compel the defendant to perform his undertakings, and then leave the question of champerty to be determined between the plaintiff and his attorney?    Besides, in this case no issue as to the question of champerty was made, and the proposed evidence was for this reason irrelevant and was properly rejected.

VI.    The defendant insists that the court erred in refusing

the eighth instruction asked, as follows: " If you find from
the evidence that plaintiff's arm had been broken
at Moingona and set, splinted and bandaged by
Dr. Grosvenor, you will then consider whether
plaintiff would have received any injury by reason of the
accident on the freight train but for the previous injury at
Moingona. In other words, if you believe from the evidence
that if plaintiff's arm had been well and sound he would not
have received any injury by the accident on the freight train,
he cannot recover on his second count, although the pain in
his broken arm may have been increased and a cure delayed
thereby. Such damages are remote and not recoverable." In
support of this position appellant cites 3 Parsons on Con-
tracts, 177, where it is said that "if a slight bruise has been
so ill-treated by a surgeon that extensive inflammation and
gangrene has supervened and a limb is lost, the defendant is
not answerable for this. Nor, on the same principle, ought
he to be held responsible if the same consequences follow from
a slight bruise by reason of the peculiarly unhealthy condition
of the plaintiff, if the defendant had no means of knowing
this." No adjudicated case in support of the text is cited,
and it would seem from the language employed that the
author was aware of none. It is further apparent that the
instruction asked presses the doctrine much beyond that
stated in Parsons. The case there put is one where a slight
bruise results in the loss of a limb, because of the peculiarly
unhealthy condition of the subject, of which the party inflict-
ing the injury had no means of knowledge.

But the instruction asked denies recovery for any injury,
however directly occasioned by the negligence of defendant,
and however rough and violent the shock to which
plaintiff was subjected, if the jury should find
that plaintiff would not have been injured, if his arm had
been sound and well. If this doctrine has ever been recog-
nized by any court, the sooner, in the interest of humanity,
it is abandoned the better.

Followed to its logical results the doctrine of this instruc-
tion would practically deny protection to anyone traveling by

stage coach, steamboat or railway who is possessed of less than ordinary health and physical endurance. For if a broken arm places a party beyond the pale of protection against injuries which he would not have sustained if his arm had been sound, the invalid cannot recover for injuries which he would not have received if he had been well; and this, notwithstanding the negligence of the defendant. A party is not to be denied the right of locomotion because he is not blessed with a robust constitution. He has a right to expect and demand in his transportation the exercise of the highest degree of care; and he has a right to be compensated for all injuries to which his own negligence has not contributed, and which would not have been sustained if such care upon the part of the defendant had been exercised. It is incumbent upon common carriers to take notice of the fact that invalids frequently travel for the purpose of regaining health, or impelled by necessity, and they must be held to a strict accountability for all injuries which result from a failure to exercise proper care.

VII. It is urged in the next place that the court erred in refusing to give the third instruction asked by defendant. Appellant, in this respect, misapprehends the record. The record does not show that the third instruction was refused. The abstract impliedly shows that it was given.

VIII. It is claimed that the verdict is contrary to the third instruction of the court, as follows: "If you believe from the evidence that such injury as the plaintiff claims he has sustained could not have resulted without leaving such marked traces of deformity as would manifest itself to medical experts, so as to enable them to detect the cause of his present physical condition, aside from the mere wasted and shrunken condition of the muscles of his right arm and shoulder; and if you further believe from the evidence that the wasted and shrunken condition may have resulted from simple disuse without injury, and no such, nor any traces of deformity can be discovered, as would account for the wasting of the muscles, then you are bound to attribute it to disuse." It is claimed the evidence

7. PRACTICE: finding inconsistent with instruction.

shows that there are no traces of deformity, and that the condition of the arm can be traced only to disuse. Let this be conceded. What follows under the instruction? That the defendant must have a verdict? Defendant asked the court to instruct the jury that if they found such facts to exist they must find for the defendant. But the court refused to so instruct the jury, and gave as a substitute the third instruction, which is almost a literal copy of that asked, omitting the direction that if they found the facts to so exist they must find for the defendant. The only consequence which the court attached to the finding of the existence of the fact stated is that they should attribute the wasting of the muscles to disuse.

The jury found specially that the present condition of plaintiff's arm is not due to the substantial disuse of it for the past two years and a half. It must be admitted that this special finding is contrary to this third instruction, if it be conceded that the evidence shows the shrunken condition of the arm can be traced only to disuse. But the jury also found specially that plaintiff's arm was broken on the freight train October 1st, 1870. Defendant's theory is that plaintiff sustained no injury. The jury have found he did. An erroneous finding that the shrunken condition of the arm was not occasioned by disuse could only affect the amount of damages, and not the right of plaintiff to recover. But it is not claimed that the verdict is excessive, if plaintiff is entitled to recover at all. This finding, therefore, worked no prejudice, and becomes immaterial.

IX. It is next urged that the verdict is not sustained by the evidence. The case is the ordinary one of a conflict of evidence. The evidence is voluminous, and a review of it would be neither desirable nor profitable. It may be conceded that the preponderance of the testimony shows that the injury of plaintiff is much less than he claims. Yet this is the second verdict for the plaintiff. The amount is not large. The former verdict was for $2,000.00. The evidence is not of such a character as to bring the mind irresistibly to the conclusion that the verdict was not the result

8. VERDICT: conflict of testimony.

of a free, sound and unbiased exercise of judgment on the part of the jury, and that manifest injustice will result if the verdict is permitted to stand. We cannot, therefore, disturb the verdict. See Hammond's Digest, 615 and cases cited.

X. Lastly it is claimed that the verdict should be set aside because of misconduct of the jury. An affidavit was filed showing that during the night of the 16th day of August and on the 17th day of August, up to the time the jury agreed on their verdict, individual members of the jury were allowed to separate and retire from the jury room repeatedly without the attendance and out of sight and hearing of the bailiff, and that a member of the jury threw a paper with something written thereon, which an attorney of plaintiff picked up, and refused to show to defendant's attorney or to a bailiff of the court. Appellant seems to concede under the authority of *Cook & Owsley v. Walters*, 4 Iowa, 77, that the mere separation of the jury without some showing of prejudice will not be sufficient to set aside the verdict. And see, also, *Boggs v. Chicago & Northwestern R'y Co.*, 29 Iowa, 577. It is claimed, however, that an unwarranted communication on the part of the jury with plaintiff's attorney has been shown. The affidavit of this attorney, however, shows that the paper was not probably intended for him, that his attention was directed to it upon hearing it fall, and that he immediately carried the paper to the judge and exhibited it to him in the presence of two other parties; that he never in any manner had any communication with any member of the jury, and that he has the original paper in his possession, ready to exhibit either to the curious or to legal observation. Under this state of facts there is no ground for holding that the jury held improper communication with any one, from which prejudice could possibly result.

We have examined *seriatim* all the objections urged, and we find no error in the record.                    AFFIRMED.

### ON REHEARING.

DAY, J.—Upon the petition of appellant a rehearing herein was granted. Some of the points made in the petition for rehearing require notice.

I. When the cause was originally submitted no authority was cited upon either side, upon the question of champerty. Appellant now calls our attention to *Barker v. Barker*, 14 Wis., 131, which cites *Webb v. Armstrong*, 5 Humph., 379, and *Hunt v. Lyle*, 8 Yerg., 142. These cases hold that, whilst champerty may not be shown as a defense to the action, yet, when it appears that a plaintiff is prosecuting an action under a champertous arrangement between himself and his attorney, the action should be abated, leaving the plaintiff at liberty to commence anew his action under a contract not tainted with champerty.

**9. PLEADING: evidence: champertous contract.**

In *Barker v. Barker, supra*, which is the only case in which the question received any considerable attention, the court said: "The question whether a suit is prosecuted upon a champertous agreement is one outside of the real merits of the case. And although an issue might possibly be made on it, yet we think it need not necessarily be pleaded, but that if it comes to the knowledge of the court in any proper manner, it will refuse longer to entertain the proceedings. It would seem to stand upon similar grounds with an action for divorce prosecuted by collusion between the parties. The court, on arriving at a knowledge of the fact, would not be confined to the strict rules applicable to evidence offered on the trial of the case, though it undoubtedly should not proceed upon mere suspicion, or without giving opportunity for avoiding the alleged champerty by proper proofs on the other side. In this case the evidence is such as leaves no doubt in our minds of the existence of the agreement, and its existence is assumed in the brief of counsel for appellants."

In this case no question seems to have been made as to the admissibility of the evidence, and it clearly established the existence of a champertous agreement between the attorney and his client. In the case at bar the answer is merely a general denial of each allegation of the petition. Upon cross-examination of plaintiff defendant asked the following questions: "State what per cent, if any, of the recovery, if any, you have contracted to pay your attorneys? At whose expense has this suit thus far been carried on? State whether Board-

man, Brown & Williams did not pay the expenses of pro-
curing witnesses for the first term of this court, after the com-
mencement of this cause, out of their own funds, and by agree-
ment with you? State whether or not you have entered into
any written contract with your attorneys for a division of the
amount recovered in this case?"

These questions were objected to because immaterial and
irrelevant to the issue, incompetent and improper matter of
cross-examination; and the objection was sustained.

It is to be observed that the effect of the matter sought to
be proved is to abate the action. Section 2732 of the Code,
provides that "matter in abatement may be stated in the
answer or reply, either together with or without causes of
defense in bar."

And section 2704 provides: "Under a denial of an allega-
tion, no evidence shall be introduced which does not tend to
negative some fact the party making the controverted allega-
tion is bound to prove."

Under these provisions of our statute we are well satisfied
that proof of matter tending to abate the action, if objected
to, ought not to be received, if such matter has not been
pleaded.

Any other construction would be productive of great hard-
ship and confusion. A party might be called upon to meet
an important issue, suggested for the first time in the cross-
examination of his own witnesses, or the testimony of those
produced for the defense. If, as is said in *Barker v. Barker*,
the court ought not to proceed without giving opportunity
for avoiding the alleged champerty by proper proofs on the
other side, the plaintiff ought, in a proper case, to have a con-
tinuance, for the purpose of procuring testimony, and we
would thus have the anomaly of a continuance for the pur-
pose of procuring proof upon a question not put in issue by
the pleading.

Without further elaboration of this question we have no
doubt that the objection to the proffered testimony was prop-
erly sustained.

II. In the discussion of the eighth point reviewed in the

foregoing opinion, a mistake was made in stating that the jury found specially that plaintiff's arm was broken on the freight train, October 1st, 1870.

The jury found that plaintiff's arm was not broken by the accident on the freight train, October 1st, 1870, but that it was broken at the time of the accident at Moingona on the day preceding.

The jury also returned the following special findings: "At the time of the accident to the freight train was plaintiff thrown against the conductor's desk? Ans. Yes. Was the plaintiff thrown by the freight train accident with his shoulder and neck against the stove in the car? Ans. Yes. Did the plaintiff receive any injury at Moingona or at the freight train accident which has caused permanent disability to his arm? Ans. Yes. Was the present condition of plaintiff's arm caused by an injury received October 1, 1870, on defendant's freight train? Ans. Yes."

These questions were submitted to the jury by the defendant. The answers clearly show the existence of circumstances from which the jury might well have found some injury was sustained at the happening of the accident on the freight train. And the last finding of the jury involves a distinct assertion that plaintiff sustained an injury October 1, 1870, on the freight train. The general verdict for plaintiff also involves and includes such a finding, for the jury find the arm was *broken* at Moingona, and, on account of the accident occurring there, the jury, under the direction of the court, found for defendant.

The jury did, then, find that injuries were sustained at the time of the freight train accident, for which the plaintiff was entitled to recover something. This being the case, the cause of the shrunken condition of the arm could affect only the measure of damages, as before said.

The verdict is small, $1,200. It is not claimed that it is excessive. Upon the contrary it is conceded that it is not too large, if plaintiff is entitled to recover anything.

Under this state of facts the special finding of the jury that the present condition of plaintiff's arm is not due to the

substantial disuse of it for the past two years and a half is immaterial, and, even if not supported by the evidence, the judgment ought not, on that account, to be set aside.

These are the only points in the petition for rehearing, which seem to us to require notice.

The opinion is refiled, and the judgment

AFFIRMED.