HARRY ROSS v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 17, 1907.

Nos. 15,216—(63).

**Master and Servant—Injury at Culvert.**

A railway company constructed a drain or culvert across a spur track leading to an elevator, by placing a plank on the ground between two ties and a similar plank upright on each side. The planks extended under the rails and beyond the ends of the ties. The part of the drain thus formed which was between the rails was covered, but the end beyond the ties was left uncovered. A brakeman, while in the performance of his duties, stepped into the opening and was thrown and injured. The question whether it was negligence on the part of the railway company to maintain the track in the condition described was properly submitted to the jury.

**Damages.**

A person who is injured by the negligent act of another may recover the resulting damage, although damage would not have resulted, or would have been much less, but for his diseased or weakened condition before and at the time of his accident.

**Privileged Communication—Physician.**

A party may consent that his attending physician may testify against him, but a statement made during cross-examination, without an opportunity to advise with his counsel and without a full understanding of his legal rights, that he has no objection to the physician testifying, should not be treated as waiver of his privilege which cannot be thereafter withdrawn.

Action in the district court for Stearns county to recover $10,000 for personal injuries. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of the plaintiff for $2,500. From an order of Dibell, J., acting in place of a judge of the Seventh judicial district, denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *Geo. H. Reynolds,* for appellant.
*Humphrey Barton,* for respondent.

[1]Reported in 111 N. W. 951.

ELLIOTT, J.

The respondent was a freight brakeman in appellant's employ. On December 20, 1904, in getting off the train at Minneapolis, he stepped on a lump of coal and sprained his left ankle. On account of this injury he received medical attendance and was unable to resume work until January 5, 1905. On January 8 he received treatment for the ankle from the company's surgeon at Park Rapids. He claims to have suffered another injury, for which this action was brought, at Little Sauk on January 11, in the evening, between 5:30 and 6 o'clock.

Near the station at Little Sauk there is a spur track, which extends on a fill over low ground to an elevator. Between two of the ties on this track, in a space about seven inches wide, a surface drain or culvert had been made, by laying a plank on the ground between the ties and a similar plank upright at each side. This drain was covered between the rails of the track, but was uncovered between the ends of the ties outside the rails. It was about seven inches deep at the place where the respondent was injured. The respondent testified that, while engaged in the performance of his duties as brakeman, he was running along the track, stepping on the ends of these ties, and when he came to this drain

> My heel went down in there, the ball struck the edge of the plank, and I had a long overshoe on, buckled up, and my heel caught, and when I stepped in it my foot bent up like that and it hurt me pretty bad, and I was running under headway and caught the foot, kind of caught a little while, and when I was falling down I threw myself away from the track, or the car would hit me.

He continued his work until he arrived at Melrose, when he examined his foot and found a spot about midway between the knee and the ankle which looked red, as though it had been hit against something when he fell down. He continued to work until January 15, when he went to the company's surgeon at Alexandria for treatment.

The appellant claims that the accident at Little Sauk never happened, and that the serious condition of the respondent's left leg, which subsequently developed, was due to a disease known as "osteomyelitis," an inflammation of the bone and its marrow, which had its inception

in a gunshot wound received when he was a boy. After the respondent was taken to the hospital a difficult and successful surgical operation was performed, which resulted in the growth of a new and healthy bone in place of what was removed. The action was brought to recover damages, on the theory that the railway company was negligent in leaving the so-called culvert uncovered. The verdict was returned in favor of the plaintiff, and the defendant appealed from an order denying the motion for judgment notwithstanding the verdict or for a new trial.

The assignments of error present the question whether there was any evidence of negligence on the part of the defendant, and, if so, whether the plaintiff was guilty of contributory negligence.

As to the issue of negligence of the defendant we agree with the learned trial judge that it is very plain that it would be much more dangerous for a brakeman to pass along the ends of the ties with the uncovered drain present than if it were not there. The drain was an abrupt opening, with the bottom considerably lower than the usual level between the ties, and a brakeman passing along the ends of the ties, as in the ordinary course of this occupation he would be likely to do, might easily be injured by stepping into it. The respondent was working in the dark under conditions which made it necessary to carry a lantern. He had no notice of the opening, which had been there for a number of years. We think the jury was justified in finding that the defendant was negligent in maintaining the drain at that place at that time in such condition. We can see no difference in principle between an uncovered drain between the ends of the ties beyond the rails and the same opening in a drain between the rails, such as was considered in Franklin v. Winona & St. P. R. Co., 37 Minn. 409, 34 N. W. 898, 5 Am. St. 856. Whether the respondent sustained any injury at the time or place named was a question for the jury to determine. His evidence was direct and positive, and the issue was properly submitted to the jury.

We find no evidence which would have justified the jury in finding that the respondent was guilty of contributory negligence. There is nothing to show that he knew, or had any opportunity to know, of the existence of the drain before the time of his injury. The question of contributory negligence and assumption of risk was for the jury.

The jury was justified in finding that the damages which the respondent suffered were occasioned by the fall, which resulted from the leaving of this drain uncovered. It is possible that the bone in the respondent's leg was diseased as a result of the old gunshot wound; but it does not appear that he had suffered therefrom during recent years. He had been following his ordinary employment without inconvenience. One of the railway surgeons testified that, when a bone is diseased, a blow is a common exciting cause of such conditions as were found in this case. The respondent's ankle was weak from the former injury; but a person is not prevented from recovering damages because at the time of the injury he was in such a condition that an injury was more likely to be attended with serious results, or by the injury an old disease was aggravated, or, had it not been for his diseased or injured condition, he would not have suffered from the new injury. "The duty of care toward and of abstaining from the unlawful injury of another applies to the sick and the weak and infirm to the same extent as to the robust and healthy, and when that duty is violated the measure of damages is the injury done, even though such injury might not have resulted, but for the peculiar physical condition of the person injured, or may have been aggravated thereby. Where a tort is committed * * * and injury may reasonably be anticipated, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health." Watson, Dam. Pers. Inj. § 195; Louisville v. Wood, 113 Ind. 544, 566, 14 N. E. 572, 16 N. E. 197; Crane Elevator Co. v. Lippert, 63 Fed. 942, 11 C. C. A. 521; Railroad v. Northington, 91 Tenn. 56, 17 S. W. 880; Allison v. Chicago, 42 Iowa, 274.

Dr. Campbell, who had treated the respondent for his sprained ankle, was not called by the plaintiff as a witness. When the plaintiff was on the witness stand he was asked by defendant's counsel whether he was willing that Dr. Campbell should testify as to "what he found about your ankle when he treated you." The witness answered:

I don't see as there is any objection on my part.

Q. You are willing, then, that he should testify?

Mr. Barton: Hold on.

Mr. Countryman: That is a question for him, not for you.

The objection was sustained by the court, with the remark that the attorney should have an opportunity to consult his client, and the client to consult with his attorney, before he put himself in that position. Mr. Barton had not placed his objection upon this ground. But thereafter, when Dr. Campbell was called as a witness for the defendant, he objected to "the doctor giving any testimony on the ground it is incompetent, irrelevant, and immaterial, privileged communication. He was consulted relative to an injury that hadn't anything to do with this accident." Appellant's counsel claimed that he was entitled to the doctor's testimony, because the plaintiff himself had stated that he had no objection to the doctor's testifying. It is apparent that the witness did not understand the full force and effect of what he said, and it does not appear that he was informed of the fact that the evidence called for a privileged communication. In matters of this kind the client should be permitted to advise with his attorney in order that he may act with full knowledge of his legal rights. The trial court was clearly within his rights when he sustained the objection to the question put the plaintiff and the witness Dr. Campbell.

In view of the character of the injury, the nature of the operation, and the fact that the disability resulting therefrom is to some extent at least permanent, we cannot say that the verdict of $2,500 was so excessive as to appear to have been given under the influence of passion and prejudice.

Order affirmed.