[Civ. No. 13781. First Dist., Div. Two. Jan. 13, 1949.]

MARGARET C. JONTE, Respondent, v. KEY SYSTEM (a Corporation), Appellant.

Donahue, Richards, Rowell & Gallagher, Tinning & De Lap and J. Vance Porlier for Appellant.

Nichols, Richard & Allard for Respondent.

NOURSE, P. J.—This is an appeal by defendant in a negligence action from a judgment on a verdict for plaintiff in the amount of $4,500.

Respondent was injured on July 25, 1946, at the Key System terminal in Richmond, where, when she tried to change busses, her abdomen struck a guardrail along the curb in front of the loading platform. Her theory of the accident, to which she testified, was that the bus she wished to board was standing still with door open taking in passengers but that when she was stepping in with one foot on the lower step and one hand at an inner rail of the bus, the bus pulled out and threw her against the guardrail. Appellant's theory was that respondent ran along the departing bus and inadvertently ran into the guardrail. The evidence was in sharp conflict. A disinterested eyewitness corroborated respondent's testimony in all respects, the evidence of other independent eyewitnesses supported the theory of appellant notwithstanding some discrepancies. The bus driver testified that he never saw respondent and was not aware of any accident; he saw

in the inside rearview mirror that the doors were clear when he started the bus, but he could not see very well out of the right outside rearview window as it had rained on it.

The evidence further shows without conflict that after hitting the guardrail respondent fell from the curb into the driveway, that she was in great pain, that she was taken in an ambulance to the Permanente Field Hospital and from there transferred to the Richmond Hospital for observation because of lumbosacral strain and possible injury to the viscera. She was treated in the hospital by her own physician, Dr. Petrucci, for the lumbosacral strain until August 4, 1946, when she was dismissed somewhat improved. She remained under treatment of Dr. Petrucci and was mostly in bed; the severe pain in back and abdomen was still evident when on October 24, 1946, she was examined by Dr. Fraser for the Key System. She also complained of pain in the right leg. At the time of the trial in October, 1947, the pain in back and leg was still present most of the time and she was still under treatment.

The correct appreciation of plaintiff's injury is complicated by the undisputed fact that both before and after the accident she was suffering from diseases of the pelvic organs. She had had five children and suffered from ill effects of childbirth. Approximately a month before the accident Dr. Petrucci had performed an operation in which according to his testimony he foreshortened the ligaments of the uterus because of a prolapse and removed an ovarian cyst. The hospital records mention as admission diagnosis "pelvic inflammation." The morning of the accident plaintiff had been to Dr. Petrucci for a final check up at which time her condition had been found as good as could be expected after the operation. She had no pain in back or leg at that time. On October 18, 1946, she was again admitted to the hospital with diagnosis: Pelvic inflammatory disease. At that time Dr. Petrucci was on vacation and Dr. Kern treated her in his absence with penicillin until October 23 at which date she was discharged improved. At his return Dr. Petrucci took up the treatment again. On November 17, 1946, he had her again hospitalized with the admission diagnosis Fibroid Uterus. He performed an operation in which the uterus and other female organs were removed and an incisional hernia repaired.

Dr. Petrucci ascribed the pelvic trouble of plaintiff in October and November which necessitated the second operation

to the trauma of the accident whereas other medical witnesses denied that causal relation.

On appeal the Key System urges that the judgment should be reversed because of prejudicial misconduct of counsel for plaintiff and because the evidence does not support the verdict with respect to the extent of the injury caused by the accident.

■ Concerning the alleged misconduct appellant complains that plaintiff's attorney on cross-examination asked questions about conferences of defendant's witnesses with employees and attorneys of defendant Key System and about possible suggestion which might have influenced the testimony. No objections to such questions were interposed except for one not clearly defined objection to a remark of plaintiff's attorney that these questions were not meant to imply anything but only to have the jury know what the witness knew about the evidence. The objection was overruled and correctly so. Where the testimony of eyewitnesses is as inconsistent as in this case, counsel must have a certain freedom to inquire into the origin of the contradictions. ■ Moreover, the questions had been answered and in a manner not unfavorable to appellant.

■ Appellant concedes that in itself the cross-examination may be considered harmless but contends that it takes color from remarks made by counsel for plaintiff during his closing argument. There he used the following language as to which appellant duly asked instruction that the jury disregard it, which instruction was given each time when asked: "I am not up here telling you the Key System is a monster or any such silly thing, and I don't want anyone to get the idea that I am, but Ladies and Gentlemen, this is just a claim to them, and it is a claim they want to beat. If they get what they want, they want to beat this claim, and they were determined to do it from the very time that man walked out of that office. It isn't the first claim they had and it isn't going to be the last and so they know just how to go about this, you can bet on that, and when this case is over, Ladies and Gentlemen, they are going to walk over to the file cabinet, and if the verdict is against Mrs. Jonte, they are going to put that file in the cabinet, and look around, and say with a smile, 'We beat that one let's get to the next one.' "

Here the first instruction to disregard was asked and given.

". . . They proceed to the point where they say, 'Well, we'll force this woman into trial, cause her the expense of going to Court.' "

Instruction to disregard asked and given for the second time.

"The record shows that the Key System was represented by the firm of Donahue, Richards, Rowell and Garin, so when the time came to try this case, they said, 'Who is the man to get to go up to Martinez and beat this case?' "

Third objection and instruction to disregard.

"So they hired Mr. De Lap and Mr. De Lap, as you know is a master and veteran of the courts, and he knows his way around in the courts; he is experienced as a lawyer and he is experienced as a politician in matters—"

Here counsel for defendant asked that the argument be stricken. The court stated that it was going to strike the statement about being a politician and admonished the jury especially to disregard it; plaintiff's attorney then withdrew it.

After that the closing argument proceeds for a long time without objection, request for instruction to disregard, or motion to strike, even when language is used to the effect that the only way in which defendant could take care of this case in court was by having "a man who will come in here and do the very things that are necessary, if possible, to confuse evidence." The only other request for an instruction to disregard and the giving of such instruction took place after plaintiff's attorney used the following language:

"We all know very well that attorneys speak to witnesses, or they wouldn't know what they were going to say when they come into court, but what happened here? They weren't interrogated as to what they knew; they held conferences and objected to any question in that regard. Why? Why was that little boy subjected to days of suggestion?"

There can be no doubt that the language quoted was improper and constituted misconduct. Without basis in the evidence counsel for plaintiff paints the defendant company as accustomed to callously trying to "beat" claims of its patrons by such means as subjecting them to the expense of lawsuits, influencing witnesses by suggestion and confusing evidence, with an intimation moreover of the use of political influence. Counsel for defendant, though personally praised, is represented as the man able to reach results in such manner. "Remarks addressed to a jury tending to excite their prejudice or passions or to cause resentment, or unjustly enlist their sympathies in favor of their client or against the cause of his adversary, are always improper and should be avoided."

(*Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621, 628 [286 P. 456]). Certainly in a close case, as the one at bar, such misconduct, if not corrected, could well be considered prejudicial.

However the question still confronts as whether, after the admonitions requested had been made by the court there remained such prejudicial effect as to require reversal. Appellant concedes that usually the giving of the admonition requested is sufficient to cure error but contends that the case before us belongs to those where nevertheless reversal is required because of deliberate and reiterated misconduct consisting in personal attacks on defendant and its attorneys by the charge of serious positive facts like subornation of perjury. Notwithstanding the reprehensible character of counsel's conduct we cannot take so serious a view of it. Influencing of witnesses by suggestion, as charged here, differs greatly from subornation of perjury and need not even imply bad faith. Neither do we see sufficient indication that counsel's permissible questions mentioned earlier and the improper statements which only appeared in his closing argument formed part of one malicious design, but we rather consider the latter as unpremeditated results of inordinate zeal. Several arguments taken together convince us that no reversal is required to cure prejudice to defendant whereas no reversal should be granted for the sole purpose of punishing counsel. (*Hulburd* v. *Worthington*, 57 Cal.App.2d 477, 479 [134 P.2d 832]).

In the first place counsel for appellant at no time asked for a mistrial—all he asked for was that the jury be instructed to disregard the passages objected to. This the trial court did every time. Appellant got all it asked for (*Ades* v. *Brush*, 66 Cal.App. 2d 436, 445 [152 P.2d 519].) Next the matter of prejudice was passed on by the trial court in denying a motion for a new trial. Although this conclusion of the trial court is not conclusive on appeal it is entitled to much consideration (*Citti* v. *Bava*, 204 Cal. 136, 140 [266 P. 954]) and his conclusion in the matter should not be disturbed unless it is plainly wrong.

The censured expressions in this case did not contain an appeal to dangerous prejudices, racial or otherwise, as in some cases in which reversal was held necessary, and it seems probable that the jury saw through the unsupported rhetorical attacks of plaintiff's counsel and did not permit them to

influence their verdict. The verdict itself can well be understood without assuming such influence. As the last point is closely related to appellant's second assignment of error, we shall treat the two together.

Appellant's claim as to insufficiency of the evidence to support the verdict is confined to the sole contention of the falsity of the evidence of Dr. Petrucci that the accident necessitated the operation which he performed in November, 1946, to remove the uterus and other female organs of plaintiff. However there is no indication that the verdict was based on consideration of said operation as part of the damage caused by the accident and the amount of the verdict can be justified without taking it into consideration. The complaint states as injuries inflicted severe straining, spraining and tearing of the ligaments and tendons of the lumbo-sacral region of the back; contusion of the abdominal viscus and probably a hernia formation. No injury to the uterus is mentioned. In his argument to the jury counsel for plaintiff stated expressly that plaintiff's "internal troubles would undoubtedly have developed to where she would have to have a subsequent operation," although nobody could say when. These circumstances make it less probable that the jury would have included the operation as basis of the verdict. The evidence is without conflict that just before the accident plaintiff was without pain and that since the moment of the accident on July 25, 1946, she has been in severe pain, impeding her normal life as a housewife, which condition continued at the time of the trial in October, 1947, and the end of which could not be foreseen at that time. There is no contention of any malingering or aggravation. Even the physician of the Key System testified that plaintiff seemed cooperative and sincere. Neither did any of the medical witnesses doubt that the accident was one of the causes of the back condition. The restriction was made by appellant's physician Dr. Fraser that because of the ill effects of childbirth from which plaintiff was suffering the effects of the back strain continued much longer than would have been the case without such condition. Even if his opinion in this respect is fully accepted it would not diminish appellant's responsibility. Appellant remains liable also when a physical condition of the plaintiff unknown to appellant makes the injury suffered greater than could otherwise have been expected. (Restatement of the Law of Torts § 461; Prosser on Torts, p. 344; *Ross* v. *Great Northern Ry. Co.*, 101 Minn.

122 [111 N.W. 951, 953]; compare instruction approved in *Perry* v. *McLaughlin,* 212 Cal. 1, 11 [297 P. 554]). Even as a compensation for the severe and persisting back injury alone an award of $4,500 damages would not necessarily be excessive. We therefore do not consider the amount of the award an indication that any bias or prejudice caused by misconduct of counsel has influenced the minds of the jurors. It is not even contended that the implied finding of negligence shows such bias under the evidence in this case. Under these circumstances we cannot say that the conclusion of the trial judge implied in his denial of a new trial is plainly wrong.

With respect to the alleged insufficiency of the evidence appellant concedes that as a rule the jury is the sole judge of the credibility of the witnesses (*Peri* v. *Los Angeles Junction Ry.,* 22 Cal.2d 111, 117 [137 P.2d 441]) but contends that the evidence given by Dr. Petrucci is so contradictory and inherently improbable that it should be completely disregarded. We have carefully examined the record but do not find a sufficient ground for eliminating the evidence of Dr. Petrucci as a matter of law. His difference of opinion with other physicians as to the causal relation between the accident and the necessity of the second operation is merely a matter of conflict which raised a problem for the jury, and not for the appellate court. *Shaw* v. *Owl Drug Co.,* 4 Cal. App. 2d 191, 196 [40 P.2d 588].

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied February 11, 1949.