Walter E. Hart, J.
In this action, tried by the court without a jury, for personal injuries, plaintiff by a fair preponderance of the evidence has established defendant’s negligence in the operation of his motor vehicle and his own freedom from contributory negligence.
The perplexing issue in this action is the amount of damages to be awarded. While an award of compensatory damages for pain and suffering or for death requires the trier of the facts in every instance to resort to a guess or an estimate (cf. Houghkirk v. President of Delaware Hudson Canal Co., 92 N. Y. 219), the task is more difficult when it involves a claim for an aggravation or exacerbation of a prior existing condition which, it is contended, was quiescent prior to the occurrence. This is so because of the difficulty of subtracting from the end result of a party’s physical condition that aspect which was preexisting. The rule is stated (G. J. S., Vol. 25, Damages, § 21, pp. 479-480): “Where defendant’s wrongful act does not cause a diseased condition but only aggravates and increases the severity of a condition existing at the time of the injury, plaintiff may recover only for such increased or augmented sufferings as are the natural and proximate result of defendant’s act.”
The proof upon the trial established that prior to the accident plaintiff had been suffering from Legg Perthe disease of the left hip. It was not disputed that this condition invariably has its inception between the ages of three and one-half and nine, that it consists of a vascular necrosis of the head of the femur due to the cutting off of circulation. As a consequence the head of the femur becomes flattened. The condition may be asymptomatic or over the years degenerative arthritic changes develop. A person suffering from the condition may be free of pain and the joint may in some cases be used normally in connection with the weight-carrying function of the hip. On the other hand, if the arthritic changes develop extensively and the resultant pain become intense, an arthrodesis or fusion of the hip is performed.
*950 The proof further discloses, plaintiff’s testimony to the contrary notwithstanding, that prior to the injury of March 23, 1954, damages for which are sought in this action, plaintiff had a half-inch shortening of the left leg with slight atrophy “ secondary to lack of full weight bearing and a limitation of motion in the left hip.” Shortening of the leg was noted on his admission to the Kings County Hospital on the day of the accident, and also in a letter dated March 18, 1950, written by Dr. Umansky at the behest of plaintiff to the Federal Security Agency in support of plaintiff’s application to reopen a compensation claim for which an award had been made for an injury sustained in the hold of a ship on November 5, 1948. Plaintiff at first received an award for a fracture of a finger and thereafter requested that the matter be reopened so as to press a claim for an injury to the hip sustained at the same time. Dr. Umansky further stated in his letter: “In either event the patient exhibits the effects of a secondary traumatic degenerative arthritis. Both Perthe’s disease and slipped femoral epiphysis predispose to secondary degenerative changes in the hip joint when the hip is subjected to trauma, and in this case, the trauma is causally related to the onset of the degenerative arthritis producing this patient’s pain and limitation of motion.”
Dr. Kennedy, who examined plaintiff on behalf of the Federal Security Agency, in a report dated August 17, 1950, found: ‘ ‘ This claimant has a preexisting Perthe’s disease and apparently this pathology is aggravated to some extent by the current accident. The degree of related disability is somewhat difficult to determine. I believe the overall disability at this time is equivalent to a loss of 40% of the leg but I would suggest a related schedule not to exceed 15% of the left leg.” The claim was then compromised on August 25, 1950 on the basis that 7%% of the 40% total loss of use was causally related to the accident of November 5, 1948.
After the accident of November 5, 1948 plaintiff was hospitalized in the Holy Family Hospital from November 13, 1948 to November 15, 1948 for the fracture of the finger and for the pains referable to the left hip. He was again hospitalized from August 29, 1949 to September 3, 1949 for pains in connection with his hip condition, at which time a “ Buck’s extention ” was applied. He was again hospitalized with complaints of pain in the hip from May 11, 1949 to May 14, 1949 on which date he was discharged as improved. It would appear, however, that plaintiff was free from pain in the hip region there *951 after until the accident of March 23, 1954 since he continued in his employment as a longshoreman and hatch boss, which involved the climbing of ladders and the doing of some heavy work. Moreover, when plaintiff was hospitalized from September 29, 1953 to October 6, 1953 for severe contusions of both feet and a sprain of the right ankle, no complaints of pain referable to the left hip were noted on the hospital record although the medical history therein states “ patient five years ago was hospitalized with a broken hip.”
Immediately after the accident of March 23, 1954 plaintiff was removed to the Kings County Hospital and transferred the same date at the request of his orthopedist to the Columbus Hospital. The records of both of these hospitals show plaintiff’s complaints of severe pains in the left hip region. At the Columbus Hospital he was placed in traction and given narcotics and subjected to hypnotics to alleviate his pain and induce sleep. Plaintiff was discharged on April 6, 1954 — two weeks later — as improved.
Though plaintiff’s physician testified that when plaintiff was discharged from the hospital on April 6, 1954 he furnished him with crutches and thereafter administered physiotherapy treatments to him at his office, the records of plaintiff’s employer established that he returned to work the same date and worked for three weeks thereafter. Despite this circumstance the court is satisfied that plaintiff’s subsequent hospitalization from May 13, 1954 to May 17, 1954 for complaints of pain in the left hip were due to the exacerbation of his previous condition on March 24, 1954: The testimony of plaintiff’s physician that plaintiff during the intervening period of time continued to suffer from pain is credited by the court, and the court is satisfied that the arthrodesis which was performed subsequent to his admission to the hospital on May 18, 1954 was causally related to the accident of March 23, 1954. Subsequent to the operation he was encased in a cast from his chest to the soles of his feet and remained in bed for several months. He was hospitalized for a total period of six months. As a result of the operation he now has a one and a half-inch shortening of the leg, as a consequence of which it is always held in a rigid position. He is unable to climb ladders or bend or do any heavy work. "When sitting in a chair his leg is extended. Thought plaintiff claimed that he lost three years’ salary at the rate of between $5,500 and $6,000 a year, the proof established that he lost only about two years’ wages. His proof as to the amount he earned prior to the accident was *952 unsatisfactory but defendant in effect conceded that in 1953 he earned $4,660.22. Plaintiff’s hospital bills amounted to $3,527.40 and his doctor’s bills were $1,800.
Defendant upon the trial inter alia contended that it was not called upon to respond in damages insofar as the claim related to the arthrodesis since the accident was not the natural and proximate cause thereof. This contention was bottomed on two premises, first, that the operation was unnecessary, that conservative therapy should have been applied for a much longer period and might have obviated the need therefor, and secondly, because the condition of Legg Perthe disease was pre-existing. There is no legal basis for either of these contentions. As to the first, assuming that plaintiff’s physician had erred in the diagnosis and treatment, defendant’s negligence remains as the proximate cause thereof (Milks v. McIver, 264 N. Y. 267). As to the second contention, it has been held, “ a defendant is chargeable for all the harm and suffering which his negligent act brought on even though the plaintiff’s injuries were aggravated by his own predisposition or weakness ”. (Poplar v. Bourjois, Inc., 298 N. Y. 62, 67-68.)
In determining the amount to be awarded for damages flowing from the arthrodesis, however, the court must take into account plaintiff’s pre-existing condition and limit the award accordingly. Authority for this principle is expressed in McCahill v. New York Transp. Co. (201 N. Y. 221, 223-224): “ The principle has become familiar in many phases that a negligent person is responsible for the direct effects of his acts, even if more serious, in cases of the sick and infirm, as well as in those of healthy and robust people, and its application to the present case is not made less certain because the facts are somewhat unusual and the intestate’s prior disorder of a discreditable character. (Tice v. Munn, 94 N. Y. 621; Crank v. Forty-second Street, M. & St. N. Ave. R. Co., 53 Hun, 425; affd., 127 N. Y. 648; Allison v. C. & N. W. R. Co., 42 Iowa, 274; Owens v. K. C., S. J. & C. B. Ry. Co., 95 Mo. 169, 182.) The principle is also true although less familiar, that one who has negligently forwarded a diseased condition and thereby hastened and prematurely caused death cannot escape responsibility even though the disease probably would have resulted in death at a later time without his agency. It is easily seen that the probability of later death from existing causes for which a defendant was not responsible would probably be an important element in fixing damages, but it is not a defense.” (Emphasis supplied.) The portion of the quotation underscored reflects a rule of justice and common sense. *953 Certainly, the court may not, in fixing plaintiff’s damages for the extensive disability he now suffers from, attribute it fully to the accident but must allow the plaintiff only such sum as will compensate him to the extent to which he has been further disabled, as a result of defendant’s negligence.
Accordingly, in view of plaintiff’s special damages, his pain and suffering and his permanent disability limited by the circumstance that he had a prior existing Legg Perthe disease and shortening, with a 40% loss of use of the leg, the court finds for plaintiff in the sum of $35,000 and directs judgment he entered in that amount.
Thirty days’ stay and 60 days for a case.