Feed A. Young, J.
The claim herein was filed with the Clerk of the Court of Claims on August 11, 1956, under the title of “ Alex Beaudoin, Claimant v. State of New York ”. Upon the trial, the title was amended to read “ Alexander M. Beaudoin, Claimant vs. State of New York ”. Service was had upon the Attorney-G-eneral on August 13, 1956. The claim recited an accident to the claimant occurring on June 9, 1956, and merely alleged that he sustained severe personal injuries, without further amplification thereof. By order entered January 6, 1959, said claim was dismissed for lack of prosecution. Restoration was had by virtue of an order entered July 7, 1959, and thereafter trial held on September 15,16, 17 and 18, 1959. During trial, the court granted the claimant’s motion to increase the amount claimed from $10,000 to $50,000, grounds of the motion being that the true nature and extent of the claimant’s injuries were unknown at the time the claim was filed.
In March, 1959, claimant underwent surgery for a lesion of the intervertebral disc at the lumbosacral joint of his spine. This disc is located between the fifth lumbar vertebra and the first sacral vertebra, which are referred to hereafter as L5 and SI. The claim was tried upon the theory that the accident of June 9, 1956, aggravated a pre-existing condition, then extant *964 but dormant at L5 and SI of the claimant’s spine and ultimately gave rise to the condition which was corrected by surgery in March, 1959.
There is no question about the negligence of the State in this action, nor of the claimant’s freedom from contributory negligence. The facts with respect to the aspects of negligence herein are quite simple. On the date of the accident, the claimant resided at Massena, New York, in a trailer located to the rear of a house situated on New York State Route No. 420. Access to the trailer co Id be had via a driveway adjoining the aforesaid house.
On June 8, 1956, a New York State maintenance crew began the removal of a tree stump, part of which was located within the State’s right of way and part of which was located on private land, which included the driveway leading to Mr. Beaudoin’s trailer home. When the time arrived for the State’s forces to quit for the day, they had only partially filled the hole resulting from the stump removal. An area approximately 3 feet deep and 6 to 10 feet in diameter was left open; approximately 1 foot of this open hole extended into the driveway. This rear part of the hole so extending into the driveway was left unguarded and unlighted. In addition thereto, no warning signs were posted.
The claimant who was aware that the work was going on during the day, but unaware of the condition left by the State’s forces, returned to his trailer at approximately 1:30 a.m. on June 9, 1956. He found his nephew’s car parked to his right in the driveway as he faced the house. He took several steps into the driveway along the left-hand side of his nephew’s car, and at that point, his left leg went into that part of the hole which extended into the driveway. The night was dark, claimant was proceeding cautiously and was unaware of the condition. He found himself unable to rise from the hole, but managed to summon help and was eventually taken to Massena Hospital, from which he was discharged the same day at 4:30 p.m. Upon these facts, a finding is made that the State was negligent in creating the condition and leaving it unguarded without lights, warning signs, or barricades and that the claimant was free from contributory negligence.
The medical aspects of this claim are not so simple and clear-cut. An outline of the claimant’s medical history up to the time of his operation would seem to be in order. Claimant was approximately 56 years of age in 1956, and 59 years of age at the time of the trial. However, his physical condition indicated aging beyond his usual years. Aside from medical treatment *965 for the condition of his spine, his medical history includes an appendectomy in 1918, surgery for a hernia in 1920 and 1924, a laparotomy in 1939, left kidney removal in 1940, subtotal gastrectomy in 1944, cystitis in 1951, coronary artery disease and hydrocele in May, 1956, surgery for chronic mastitis in December, 1956. He was also hospitalized in June, 1954, March, 1957, July, 1957, February, 1958 and May, 1959 for coronary artery disease. He was again hospitalized in August, 1959 for injuries to head, neck and chest resulting from an automobile accident in August, 1959.
On December 12, 1955, while employed as a janitor in the Silver Grill in Massena, he sustained a fall resulting in a concussion and injuries to the fifth and sixth cervical vertebra and the twelfth dorsal vertebra. He had complained at this time of pain in the lower part of his back. An X ray taken and marked Exhibit 9 upon the trial showed a marked narrowing of the intervertebral disc between L5 and SI and when compared with one taken on June 9, 1956, revealed an identical condition. He remained in the Massena Hospital from December 13, 1955 to December 22,1955, and thereafter was transferred by ambulance to Syracuse Memorial Hospital, where his condition was diagnosed as severe back strain, and one examining physician at the hospital stated in his report that he found no evidence of organic neurological disease.
Claimant was certified by the Compensation Board as able to return to his usual work on April 2, 1956. He returned to such work as janitor at the Silver Grill and performed all of the laboring tasks entailed by such employment until May 15, 1956, when he left the Silver Grill to enter the employment of the Perini Corporation as a laborer on the Saint Lawrence Seaway Project.
He terminated his employment with the Perini Corporation on May 28, 1956, when he entered the Massena Hospital complaining of weakness, dizziness and chest pains. The claimant’s condition was diagnosed as coronary artery disease and he remained in the hospital until June 4, 1956. During this period of hospitalization, he also underwent surgery for hydrocele.
Claimant was readmitted to Massena Hospital at 2:00 a.m., June 9, 1956, as a result of the accident which is the basis of the claim herein. He was treated for contusions of the back and left shoulder and discharged the same day. X rays were taken of the claimant’s lumbar spine at this time and the report upon such X rays states that the intervertebral spaces are clear and equidistant and there was no definite evidence of recent traumatic injury. This report is at variance with the interpretation *966 of these same X rays by medical experts who testified on the claimant’s behalf. Claimant was discharged from the hospital at 4:00 p.m. the same day.
Mr. Beaudoin was admitted to the Boyal Victoria Hospital in Montreal, Canada, July 12, 1956, discharged July 27, 3956, admitted July 29, 1956, discharged August 3, 1956, admitted August 20, 1956, discharged August 23, 1956. On each occasion he complained of a catch or pain in his back on going downstairs, stepping over a stone, or tripping on a wire, or while stepping over a puddle of water. In each instance, he fell and was admitted "to the hospital with a complaint of back pain. On the first two occasions his condition was diagnosed as myofibrositis, and on the last occasion as a strained back. Contained in the hospital record of his first stay at this hospital is an opinion by the radiology department of that institution to the effect that they felt there was a degeneration of the disc between L5 and SI. This is the first medical reference in any of the records to the condition now under consideration.
On November 8, 1956, at the suggestion of his attorney, the claimant consulted Dr. M. Marshall Kissane, an orthopedic surgeon who, after a physical examination of the claimant and with the assistance of X rays made at the time, was of the opinion, then, that the claimant had a type of degenerative arthritis which was aggravated by his accident in June, 1956. Dr. Kissane noticed a narrowing between the interspaces of the fifth lumber and first sacral segments. He suspected an inter-vertebral lesion and for that reason advised the claimant to see Dr. Carter. Dr. Kissane was called by the claimant as a witness upon the trial of this claim.
Claimant was hospitalized once again December 29, 1956, at the Massena Hospital for a strained back, sustained when he fell over a log. At this same time, he was operated on for chronic mastitis, referred to above. In addition to this accident, the claimant informed Dr. Kissane that prior to November 8, 1956, he injured his back again, but was not sure of the exact date and nature. The claimant had another fall on December 25, 1956, when going out to change a gas tank on his trailer.
Claimant also testified to another accident while working as a dishwasher at a place referred to as 284 Club on February 3, 1957. This occurred when he got a catch in his back and left leg while descending stairs to the cellar of the establishment. He consulted Dr. Kissane again on February 5, 1957, immediately after this accident. Dr. Kissane recommended that he consult Dr. "William B. Carter, a neurosurgeon. The claimant *967 did not follow this advice immediately, but sought treatment from several osteopaths. He finally consulted Dr. Carter on February 23, 1959. In the meantime he had three more falls, one while going to an outdoor bathroom, another while going to fix his gas tank, and a third while getting into a car.
In March, 1959, Dr. Carter, after first ascertaining that the claimant’s heart could carry him through surgery with a reasonable degree of safety, operated on the claimant’s spine and found lesion of the intervertebral disc at the lumbosacral joint, or between L5 and SI. The operation was successful and the claimant showed marked improvement. At the time of the trial, Dr. Carter was not certain of future prognosis.
Upon the trial, both Dr. Kissane and Dr. Carter testified that, in their opinion the narrowing of the disc at L5 and SI existed prior to the accident of June 9, 1956, and were of the opinion that the accident to the claimant on that date aggravated the condition in such manner that the claimant thereafter had difficulties with his back, which caused pain, incapacitated him, and ultimately necessitated the operation. Both men placed significance on the fact that the claimant was able to return to work after the December, 1955 injury, although Dr. Carter admitted he did not have all of the details with respect to that prior accident and mainly relied upon the claimant’s word that he could work before June 9,1956, and could not .thereafter. As a matter of fact, the record does show that Mr. Beaudoin was employed as a dishwasher at the 284 Club in February, 1957, but we are not informed of duration of this employment or the duties it entailed.
Dr. G-ordon A. Holding, a surgeon called by the defense, placed no significance on the fact that the claimant could work before the accident of June 9, 1956, but could not work thereafter. He was also of the opinion that the claimant could resume work three months after the operation performed by Dr. Carter.
However, all of the doctors, including Dr. Holding, agreed that the accident of June 9,1956, could be a competent producing cause of the claimant’s condition. Such testimony is sufficient to meet the claimant’s burden of proof that his alleged condition, in fact, resulted from the accident and not some independent cause. (Turner v. City of Newburgh, 109 N. Y. 301, 309; Green v. Mower, 3 A D 2d 788; Cunningham v. Maxwell, 6 A D 2d 366; Richardson, Evidence [8th ed.], § 389. See, also, Bressingham v. City of New York, 138 N. Y. S. 2d 57, affd. 286 App. Div. 811, affd. 309 N. Y. 895.) The claimant has by a fair *968 preponderance of credible evidence established that the accident of June 9, 1956, aggravated the pre-existing condition of his spine at L5 and SI.
In considering the damages to be awarded, the remarks of Mr. Justice Hart in Castaldo v. Transportation Vehicles (16 Misc 2d 948, 949) are particularly pertinent. “ While an award of compensatory damages for pain and suffering or for death requires the trier of the facts in every instance to resort to a guess or an estimate (cf. Houghkirk v. President of Delaware & Hudson Canal Co., 92 N.Y. 219), the task is more difficult when it involves a claim for an aggravation or exacerbation of a prior existing condition which, it is contended, was quiescent prior to the occurrence. This is so because of the difficulty of subtracting from the end result of a party’s physical condition that aspect which was pre-existing. The rule is stated (C. J. S., Vol. 25, Damages, § 21, pp. 479-480): ‘ Where defendant’s
wrongful act does not cause a diseased condition but only aggravates and increases the severity of a condition existing at the time of the injury, plaintiff may recover only for such increased or augmented sufferings as are the natural and proximate result of defendant’s act.’ ”
With the principle in mind, we proceed to assess damages. The claimant’s medical history has already been reviewed. A number of episodes of trauma has also contributed to the injury at L5 and SI. However, disablement followed upon the injury of June 9, 1956. The condition of the claimant’s back was a degenerative one, and would perhaps in time require corrective surgery. Upon considering the claimant’s age and general physical condition, we conclude that had his spine been perfectly normal, such general physical condition would soon preclude his continuance in employment requiring heavy labor such as the Seaway Project and, in time, heavy janitorial work similar to that for which he received $30 per week and meals at the Silver Grill, and he would have to seek light or part-time work. The operation for a herniated disc was successful, and although Dr. Carter was properly cautious about future prognosis, we find that the claimant could resume such light work or part-time work as his general physical condition would permit approximately three months after the operation.
Mr. Beaudoin also sustained other accidents between June 9, 1956, and March, 1959, and was also hospitalized for conditions not related to his spine injury. These matters also contributed to his disablement. The claimant had suffered considerable pain as a result of the aggravation of his spinal condition. In the course of treatment for such condition, he incurred medical *969 and hospital bills totaling $1,768.95. We have considered all of these factors and conclude that as a result of the injuries sustained by the claimant arising out of negligence of the State of New York, the claimant has been damaged in the amount of $12,500 and he is entitled to an award against the State of New York in that amount.
Certain requests to find submitted by the State and dealing with the treatment of the claimant by Dr. Lavine and Dr. Seidenberg and the failure of the claimant to call such doctors as witnesses in his behalf have been marked “ Found ” inasmuch as they are factually true. However, no significance is placed upon the claimant’s failure to call such medical witnesses and there is nothing in the record to indicate that such men were specialists in the field of neurosurgery or could add anything to the testimony of Dr. Kissane or Dr. Carter or to the hospital records received in evidence, nor is there anything to show that the said physicians were not available to subpoena by the defense.
This constitutes the decision of the court pursuant to the provisions of section 440 of the Civil Practice Act. Let judgment be entered accordingly.